Good morning, Your Honors. David Yusefia and Lisa Yusefia from Law Offices of David Yusefia for Appellant Mr. Benjamin Hakakha. May it please the Court. I'm sorry. We would like to reserve two minutes for rebuttal at the end. May it please the Court. Your Honor, let me just remind you that the time you have is your full time. So when it gets down to two minutes, that's your rebuttal time. Your Honors, the issue before you today is can a party unilaterally opt out of its own carefully drafted arbitration agreement when it suits its needs and get a shot at the courts at the expense and disadvantage of the other party to that agreement? Or will both parties to an arbitration agreement be on a level playing field? In March of 2001, Appellee Peregrine, a $150 million broker-dealer, alleged that Appellant Mr. Benjamin Hakakha owed it a certain sum of money. Without attempting to ask Mr. Hakakha to arbitration, which is what it should have done under its own account agreement with Mr. Hakakha, Peregrine immediately filed court in Illinois Circuit Court. Counsel, I think you can assume that we know the facts of the case. The issue is whether or not you have met the requirements for a exact malicious prosecution claim. Your Honor, I believe we have. In particular, in the state of California, there is three elements to a malicious prosecution claim. The first one being that favorable termination of the previous action. That's the difficulty because isn't there a case law that says being compelled to litigate in an arbitral form is not a termination of litigation in your favor? It is, Your Honor, but our malicious prosecution claim is not out of the underlying claim of Peregrine. Our claim is the fact that they filed this action in state court when they were clearly obligated to arbitrate this case. And even the Illinois Court of Appeal clearly found that there was no evidence on the record showing that Mr. Hakakha refused to come to arbitration or would not have come to arbitration. But, Counsel, here's the language that troubles me. In Brennan v. Tremco, the California Supreme Court said that whether the underlying action started in court or in arbitration, if it ends in contractual arbitration, that termination will not support a malicious prosecution action.  I think it has. When you are suing about the merits of the underlying action, I agree with you that the Brennan case is controlling. There's no doubt about that. But we're not suing about the merits of the underlying action. We are alleging malicious prosecution because this case was brought to begin with. Aren't you really talking more about abuse of process then? I mean, it seems like the way you describe it this morning, it's not malicious prosecution, but it's abuse of process. Your Honor, abuse of process is more than just filing a meritless claim. Abuse of process has to do more with using process to ends that it was not designed for. So, for example, if I'm in the middle of litigation and I obtain a writ fraudulently and I use that writ to attach someone's house,  that's not malicious prosecution. But it sounds like that's what you're saying Peregrine did here, is they abused the – they filed a lawsuit when they should have gone to arbitration. I mean, that's basically what you're saying, isn't it? Yes, Your Honor, it is. And so they filed a lawsuit instead of going to arbitration. Yes. Isn't that abuse of process? I submit that it's not. Well, let me ask you this. Let me shift gears a little bit then. The purpose of arbitration is to cut – is to simplify litigation. Would you agree with that? Oh, yes, no doubt. But it seems like what you're trying to do is to magnify or to expand litigation. I mean, if we accept your position, then every time somebody gets an arbitration award in their favor, then they can say, oh, now I also want to sue for malicious prosecution. No? It isn't every time someone gets an arbitration award in their favor. It's every time someone who's a party to an arbitration agreement without probable cause initiates a civil action in state or federal court in controversion of the clear terms of the arbitration agreement. I mean, that's a common occurrence. Is it not? I mean, in your experience as a lawyer, it's got to be. I understand I speak as a lawyer and a state court judge and now a district judge. That happens all the time. I mean, if somebody files an action where really they should go to arbitration. And so then I as a judge typically stay the action and say, okay, now go arbitrate. Generally, that is the case. But in the case at hand, we didn't have just someone filing an action and then, you know, the court says, okay, go arbitrate. In the case at hand, we had someone who, first of all, didn't attempt to arbitrate at all. They didn't even attempt to contact my client or to say, are you willing to come to court? Are you willing to arbitrate? They went to state court. And that action was kept alive for 24 months until the Illinois Court of Appeal reversed the circuit court and dismissed the case. I submit to you that in these facts, it is a malicious prosecution. In addition, really the proper thing to do if you have an arbitration agreement with somebody is you ask them to come to arbitration. And, you know, if they refuse, you have two choices. You either go to arbitration, get a default judgment, and you can take that to the court and record it. Or you can get the court's – then you can go to court under the Federal Arbitration Act and get them compelled to attend arbitration. So you used the word fraud in connection with the conduct of your adversary in the Illinois court, right? Yes, Your Honor. And we normally think of fraud as some misrepresentation of fact. But if I get the picture correctly, when it filed its complaint with that court, it put before the court the agreement that it was suing under, right? Yes, Your Honor. It was an attachment. That agreement said everything that you claimed that the court should have read and decided the case in your favor based upon that reading. Yes. And instead, that court, in your view, the trial court, made a serious mistake. Your Honor – That was ultimately reversed by the Court of Appeals in Illinois. But where is the fraud in laying this losing case in front of the court? The fraud was that they went to court without asking my client to arbitrate. Well, now that's not – okay, go ahead. Additionally, Your Honor, the second fraud was when they were in arbitration, a year after the court had sent them to arbitration, they came back to the court alleging that my client was unwilling to arbitrate, and therefore they asked the district court to order NASD to order my client to arbitrate. If you read the Illinois appellate decision, it's clear that they got that decision by misrepresenting my client's position with regards to arbitration. So it's not in the fraud in filing the case. It's the fraud along the way in telling the court that your client wasn't willing to arbitrate, and the truth is he was. Yes, Your Honor. And that's the only fraud. Well, I would submit that they weren't truthful in filing this claim without asking my client to arbitrate. No. Totally aside from that. Aside from that. They presented all they knew to the court because the agreement went with the complaint. It did, and their complaint, they mentioned everything but the agreement. I'm cutting into your two minutes. If you want to save any, you better save it now. Thank you, Your Honor. Thank you. Good morning, Your Honors. Laurel Bellows, representing the appellees. Paragon, the individual, one of the individual defendants sits with me at counsel table, Chief Legal Officer for Paragon, Rebecca Wing, and I also represent Rob Uriah. I'm not going to repeat. I heard Your Honor's questions. I'd like to speak to one initial matter, and that is under no circumstances can appellants comply with the first requirement of the malicious prosecution triad. It's conjunctive. I don't have to remind Your Honors of that. They have to prove each and every element. I submit that they can prove none, but they certainly cannot prove a legal termination in appellant's favor.  Why did your client not only seek to litigate something that was supposed to be arbitrated, but go to Illinois instead of California to do it? Your Honor, first of all, arbitration is an affirmative defense. It is, as Judge Mann submitted, not unusual for a paragon or for a brokerage firm to file a complaint. If the other side decides that they choose also to sit in state court, all right, then it goes ahead. But Paragon, not in 24 months as counsel represented, but within three months after receiving a response that there was some willingness to arbitrate on the other side, and I would like to address that in one moment, but that there was some willingness to arbitrate, went immediately to the NASD, filed a claim in arbitration, and then filed a motion to compel it. And of course, Paragon, contrary to many of the references in appellant's briefs, it is Paragon that filed the motion, the claim before the NASD to arbitrate. So you're saying who went to the NASD with a request to arbitrate? Paragon. And what is that in the record? Yes, absolutely, Your Honor. Where? Oh, in the, in our briefs, and I'll get a reference for you, Your Honor. In the augmented record that has been submitted to you, the motion for clarification. The motion for clarification was filed in the Illinois court. Yes, that's true, Your Honor, and I'm not quite certain, frankly, whether you all are going to consider the augmented record filed before you, and so I don't know whether to speak to that or not. Is there anything in that record that shows that Paragon sought arbitration before filing the lawsuit? In the record before your court, the record that Judge Hatter looked to, there would not be a reference to that. We filed a motion to dismiss. Right. Right. So that's, I mean, that's the only record that would be technically before your court. Then counsel or. . . Well, if you assume that we would augment the record, what's in that augmentation that would support your representation that Paragon sought arbitration before filing suit? Most importantly, the motion that we filed for clarification of the order, the order actually that is the underlying order that we state supports the termination in our favor and also the probable cause. What was in there? Was there an affidavit or declaration or something in there? The entire motion set forth the fact that we had filed an arbitration, that we even set forth in that motion that the NASD had finally, after reversing itself, set venue in California because the point of the motion of clarification was to ask the Illinois court to consider arbitration in Illinois, in Chicago. So the entire record was before that court. The allegations regarding fraud, and it is not a generic kind of fraud that we're discussing. It is a fraud in procurement of the underlying judgment. It is something that the appellant can never establish. Well, if Paragon sought arbitration, what was the fine for then? Excuse me, Your Honor. The fine? The fine. Yes. The fine is not. . . The fine is a settlement, first of all, Your Honor. It's a consent decree. I would need to go a bit off the record to advise, Your Honor, that the fine was not paid to the NASD. It was a set-off in the ultimate arbitration. Okay. So thank you. This record is a little difficult because it was dismissed on a 12B6, so there really is no real record. Not only for that reason, Your Honor, but it's an exceedingly complex record on a very simple matter, which is whether or not there was a termination in Harkaka's favor. No. Whether or not there was probable cause to file the Illinois court complaint, yes, absolutely. Whether or not there was an exception to the Wilson rule in some fraud in the procurement of that underlying judgment in our favor, which bars the malicious prosecution case from the inception, no fraud. One, the argument of fraud is waived. Let's speak to that for a moment, if you don't mind. The argument of fraud was not made to the lower court before Judge Hatter. Well, was there a hearing? On the papers, Your Honor. Everything that came before Judge Hatter, our motion to dismiss and appellant's response to that motion to dismiss that no, not even the word of fraud mentioned, in appellant's response to our motion to dismiss before the lower court, the argument regarding fraud, the argument regarding an exception to the Wilson case was never made. But in that motion for clarification is when you represented to the court that you, your client, was willing to go to arbitration. Yes, Your Honor. And at the same time, you said that the other side was not. No, Your Honor. No? And absolutely. Pardon me for being so definite, but a false representation in the briefs. That motion for clarification before, Your Honor, should you consider it in the augmented record submitted to you, the motion for reconsideration did not mention unwillingness to arbitrate. Did you ever tell any court that your opponent was unwilling to arbitrate? Absolutely, Your Honor. It was the position of Peregrin initially on the filing of the Illinois court complaint, circuit court complaint, that we believed that Mr. Hakaka was unwilling to arbitrate. And a very important point. If you are to consider the augmented record in footnote one of Peregrin's motion for clarification, this most important motion, you will find a reference to a state court complaint filed by Hakaka in California, filed after Hakaka submitted an executed submission to arbitration before the NASD. He went to California, filed a state court complaint that is identical to the counterclaim before the NASD on arbitration. He comes here with unclean hands, Your Honor. It is part of the augmented record. You will find it in footnote one to that motion. What I'm saying is quite important. Well, the footnote one to the motion just is your representation regarding what happened. It's not the actual documents, aren't there? That is correct, Your Honor. All right. But the document is a matter of public record. I have the cover sheet of the document. It was filed in California State Court. And it was filed several months subsequent to the execution of the submission agreement to the NASD. And yet he comes here. What happened with that case, the California case? We had to go to California State Court. We removed it to Federal Court. The Federal Court stated pending arbitration, Your Honor. All right. It is filed in the Los Angeles Superior Court December 18. And I'm afraid right off, and I will provide Your Honors with the specific case number because I cannot see it at the moment from this record. But I think it is important when we are dealing with, as Your Honor mentioned, this constant use of the word fraud and constant use of the term unwillingness to arbitrate. In fact, we did believe that he was unwilling to arbitrate. In fact, all right, though the Illinois Appellate Court stated that the fact that Hakaka filed his submission agreement one day late, all right, to the NASD was not evidence of his unwillingness to arbitrate. I submit to you today that it is evidence of bad faith. All right. If we're going to be drawing inferences as is asked in all these briefs, I would submit to Your Honor that an inference to be drawn by somebody who wants to arbitrate so badly, all right, is responding to a motion to compel arbitration after we have submitted to arbitration, would promptly submit to the arbitration of the NASD. Instead, he filed that submission statement one day late. And I submit you could infer that he was hoping the NASD would not accept it. But in any case, after that submission, which the NASD did submit, accept, he went to state court in California and filed another action identical to the counterclaim. So I don't want to belabor that point. I would, you know, be willing to speak to you on any other issues as we ask you to affirm Judge Hatter's ruling. Normally, when we get to the issue of whether or not a complaint states a claim, we have a pretty simple lawsuit. I don't know how this thing got out of hand. And I am tempted to say, well, let's look at all of this record. And on the other hand, that's nonsense. We ought to look at this complaint and do what we're supposed to do, just as the district judge tried to do. I would suggest that you do that, Your Honor. In doing that, the only argument, and an unfortunate one, that the counsel made, and it wasn't this counsel who made it, I would like to remind you that this counsel has recently substituted in, so many of my remarks directed to the quality of the record are not directed to this counsel. But he did indicate that the only thing supporting his claim for fraud, Your Honor, was the fact that he said that Judge Hatter hadn't read the complaint. I would not like to be on the receiving end of that, if that's the only thing that supports his claim. So if you were looking strictly to the record, Your Honors, I think you have everything you need to affirm the decision. It would just be the pleading. That's right. And the motion. Precisely, Your Honor. But you did not oppose the motion to augment the record. Yes, I did, Your Honor. Oh, did you? I didn't see the opposition in the file. We did. Okay. All right. Thank you. Thank you very much for your time, Your Honors. Okay. Rebuttal. Good morning, Your Honors. I wanted to address a couple of issues quickly and to address the points that he had raised. One of them, the issue really here is that this matter was dismissed with prejudice, and Mr. Hakaka should have the right to bring his case. A dismissal with prejudice is a very harsh sanction. And I'll believe that the complaint could have been better written, and if we had the opportunity, we would do so. But he should at least have the opportunity to bring his claim and should not be prejudiced because of his counsel's lack of artful writing. Well, if he were given the opportunity to file an amended complaint, he's never told the district court what he'd say. He's never told this Court what he'd say. Your Honor, on the issue of legal termination, that was one of the issues that you raised. I point you to the court, to the United States Supreme Court in Moses Cone Hospital. I don't understand. Yes. Your Honor, what would he have said in an amended complaint? We don't even know that, and I don't care to know now. But the record here does not suggest what he might say in an amended complaint. Right? You might say, Your Honor, that he does meet all the three requirements. Do you agree with me that the record in this case does not tell us what he might say? The record doesn't say so. The only way we have of speculating as to what he might say is because you might tell us. Also, I direct your attention to the decision of the Illinois Court of Appeals. In there, they discuss many of the factual elements and also discuss the fraud and also show Mr. Hakaka's willingness to come to arbitration, how he's the one who asked for it. There are letters that he submitted, him and his counsel repeatedly asking to go to arbitration. I direct you to Exhibit 19. What about the California litigation that he instituted in state court? I believe he just did that because they filed the Illinois action. They pursued it for three years, and he was just trying to do that to protect his interests. The issue here is that Peregrine comes in and says, oh, well, of course we can go file suit because everybody does that. But their agreement explicitly says that the parties here waive the right to go to court. It's very explicit. It's on its face. Nevertheless, they bring this case, and they try to drag this out, and arbitration is your right to make a litigation very quick and to the point, and they didn't do that. They brought this case to drag him 1,500 miles away, make him spend a lot of money, exhaust his resources. But for the legal termination issue, I just wanted to point you to the fact that the court in Moses is very specific that says the state pending resolution of an action means that there would be no further litigation. Thus, respondent was effectively out of court so that the state order amounted to a dismissal of the action. In his response, Mr. Akaka asks the court, asks Peregrine to compel arbitration. When Peregrine files the case, he asks for that. And the court, by actually sending the parties to arbitration, legally terminates the case in favor of Mr. Akaka because that was the only prayer that he asked for. All right. Thank you, counsel. You have exceeded your time. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next two cases, Downing v. Barnhart and Lappy v. Examination Management Services, Inc., have been submitted on the briefs.
judges: Leavy, Rawlinson, Mahan